**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

AUGUST VELASQUEZ,

        Plaintiff,

        v.

ALISHA TAFOYA LUCERO, Secretary New
Mexico Corrections Department (NMCD), in
her individual capacity; HOPE SALAZAR,
NMCD Director Office Of Inspector General,
in her individual capacity; WENCE
ASONGANYI, NMCD Health Services
Administrator, in his individual capacity;
ORION STRADFORD, NMCD Bureau Chief,
in his individual capacity; ED SMITH, NMCD
Director of Administrative Services, in his
individual capacity MARK LOVATO, NMCD
General Counsel, in his individual capacity;
JEANNETTE CHAVEZ, Risk Management
Director, New Mexico Risk Management
Division (RMD), in her individual capacity;
WEXFORD HEALTH SOURCES, INC.; JOE
EBBITT, Wexford Director of Risk
Management, HIPAA, and Legal Affairs
Wexford Health, in his individual capacity and
official capacity; MICHAEL
HILDENBRANDT, Wexford Director of
Operations, in his individual capacity and
official capacity; LEANNE FUDOR, Wexford
Director Utilization Management, in her
individual capacity and official capacity;
KATHRYN KEIM, Wexford Health Services
Administrator, in her individual capacity and
official capacity; LORENZO TORRES,
Wexford Health Services Administrator, in his
individual capacity and official capacity;
ASTEN PACELLIO, Wexford Risk Manager,
in her individual capacity and official capacity;

No. 2:24-cv-01162-MIS-JHR

ELAINE J. GEDMAN, Wexford Executive Vice President and Chief Administrative Officer, in her individual capacity and official capacity; DR. KESHAB PAUDEL, Wexford Regional Medical Director, in his individual capacity and official capacity; SARAH CARTWRIGHT, Wexford Regional Director of Nursing, in her individual capacity and official capacity; LYNNSEY VIGIL, Wexford Utilization Management Coordinator, in her individual capacity and official capacity; AISTE CHAMBLIN, CNP, in her individual capacity and official capacity; DWAYNE SANTISTEVAN, Warden of the Lea County Correctional Facility, in his individual capacity; and RONALD MARTINEZ, Warden of the Lea County Correctional Facility, in his individual capacity, and GEO Group Inc.,

Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on Defendants Alisha Tafoya Lucero, Hope Salazar, Wence Asonganyi, Orion Stradford, Mark Lovato, Jeannette Chavez, and Ronald Martinez's ("Defendants" or "NMCD Defendants") Motion to Dismiss ("Motion"), ECF No. 49, filed on January 26, 2026. Defendants Wexford Health Sources, Inc., Kathryn Keim, Lynnsey Vigil, and Keshab Paudel filed a Response stating they do not oppose the relief requested in the Motion on February 9, 2026. ECF No. 56. Plaintiff August Velasquez ("Plaintiff") filed a Response on March 2, 2026, ECF No. 61, to which Defendants filed a Reply, ECF No. 67, on March 26, 2026. Upon review of the Parties' submissions, the record, and the relevant law, the Court will grant Defendants' motion.

## I.  Background

In 2021, at the time the present dispute began, Plaintiff was a 45-year-old New Mexico Corrections Department (NMCD) inmate housed in the Lea County Correctional Facility (LCCF). Third Am. Compl. at 10, ECF No. 7.[1] NMCD contracted with Wexford Health Services, Inc. ("Wexford") to provide medical care to NMCD inmates, including Plaintiff. *Id.* ¶ 17.

Defendants are employees of NMCD who occupied supervisory roles during the period Plaintiff suffered his alleged harms. Defendant Alisha Tafoya Lucero was the Secretary of NMCD and "oversaw prison operations." *Id.* ¶ 9. Defendant Hope Salazar was Director of the NMCD Office of Inspector General and was responsible for (i) "ensuring that New Mexico's contractors meet their contractual obligations," (ii) oversight of "Internal Audits and Standards Compliance," and (iii) "NMCD policy revisions and other compliance efforts related to the prevention of major prison litigation." *Id.* ¶ 10. Defendant Wence Asonganyi was the Heath Services Administrator and was "responsible for ensuring that NMCD contractors provided adequate care to NMCD prisoners." *Id.* ¶ 11. Defendant Orion Stradford was the NMCD Bureau Chief and was responsible for monitoring the work of and supervising independent contractors. *Id.* ¶ 12. Defendant Mark Lovato was the General Counsel for NMCD. *Id.* ¶ 13. Plaintiff does not name his responsibilities. *Id.* Defendant Jeannette Chavez was the Complaint Risk Management Director. *Id.* ¶ 14. Plaintiff does not name her responsibilities. *Id.*

Defendant Ronald Martinez is listed by Plaintiff as an employee of GEO Group, Inc. and

---

[1]    There are two paragraph 31s, therefore the Court cites the page number in this instance. *See* Third Am. Compl. at 9-10, ECF No. 7.

Warden of LCCF. *Id.* ¶ 16. Defendants assert in their Motion that Defendant Martinez "is a[n] NMCD employee, and never was the warden at LCCF." ECF No. 49 at 1 n.1. Plaintiff does not dispute this in his Response. *See generally* ECF No. 61. Defendant Ronald Martinez is a named recipient of a Notice of Claim as Warden, Southern New Mexico Correctional Facility (SNMCF). Third Am. Copl. Ex. 10 at 1, ECF No. 7-10. The Court assumes that is correct. Plaintiff alleged Defendant Martinez's responsibilities as Warden of LCCF were "supervising and managing personnel, maintaining order, security, and the efficient functioning of the facility, including overseeing the classification, housing, and rehabilitation of inmates." Third Am. Compl. ¶ 16, ECF No. 7. These responsibilities are assumed to be the same for the Warden of SNMCF.

On October 8, 2021, "[Plaintiff] reported acute body pain, depression, and anger." *Id.* ¶ 32. The next month, Plaintiff "began suffering symptoms of stage 4 cirrhosis," which was confirmed by lab results. *Id.* ¶ 33. Plaintiff alleges "Defendants . . . were not properly trained to provide care for [Plaintiff], including diagnosing and treating cirrhosis or providing appropriate pain management."[2] *Id.* ¶ 36. Plaintiff alleges "Defendants told [Plaintiff] that he was not suffering from stage 4 cirrhosis," and, although "Defendants knew that [Plaintiff] had stage 4 cirrhosis[,] . . . [they] refused to treat him or otherwise provide any medical care, including pain medication." *Id.* ¶¶ 34-35. Plaintiff "filed grievances on both the neglect leading to cirrhosis and refusal of pain management, both of which were ignored by Defendants." *Id.* ¶ 37.

---

[2]     In a motion to dismiss the Court takes plaintiffs' claims as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Here, the Court takes as true that one or more of the Defendants was not trained to diagnose or treat cirrhosis or provide pain management. But, as Plaintiff has made a claim against many Defendants who did not, and would not be expected to, interact directly with Plaintiff to treat his medical conditions, the Court construes "Defendants" generally when used by the Plaintiff in this manner. The Court does not ascribe particulars like this to Defendants who did not interact directly with Plaintiff.

On November 29, 2021, "Plaintiff through counsel submitted a [Notice of Tort Claim and Claims under the New Mexico Civil Rights Act (NOC)] to both NMCD and Wexford regarding gross negligence and deliberate indifference leading to [Plaintiff] suffering a burst gallbladder and cirrhosis of the liver, with subsequent refusal of pain management and ridicule by medical staff," ("NOC-1"). *Id.* ¶ 119.a; Third Am. Compl. Ex. 1 at 1-4, ECF No. 7-1. NOC-1 also highlighted "[e]xtended hospitalizations and emotional distress." Third Am. Compl. ¶ 119.a, ECF No. 7. Plaintiff's counsel sent NOC-1 to the NMCD, the Risk Management Claims Bureau, Brian Fitzgerald at the NMCD Office of General Counsel, the Warden's Office for LCCF, Governor Michelle Lujan-Grisham, and Wexford Health Sources, Inc. Third Am. Compl. Ex. 1 at 1, ECF No. 7-1. No NMCD Defendants were named recipients of NOC-1. *See id.*

"On or around December 7, 2021, [Plaintiff] complained to Defendants of acute lower back pain, and he was referred for a neurosurgery consultation," but those records are missing. Third Am. Compl. ¶¶ 38-39, ECF No. 7.

On December 8, 2021, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford addressing continuing medical neglect resulting in [Plaintiff] developing Stage 4 cirrhosis, with refusal of proper pain management even though the diagnosis was supported by lab findings from Lea Regional Medical Center," ("NOC-2"). *Id.* ¶ 119.b; Third Am. Compl. Ex. 2 at 1-5, ECF No. 7-2. Plaintiff's counsel sent NOC-2 to the NMCD, the Risk Management Claims Bureau, Brian Fitzgerald at the NMCD Office of General Counsel, the Warden's Office for LCCF, Governor Michelle Lujan-Grisham, Wexford Health Sources, Inc., and the Lea County Clerk's Office. Third Am. Compl. Ex. 2 at 1, ECF No. 7-2. No NMCD Defendants were named recipients of NOC-2. *See id.*

On December 28, 2021, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford [making] [a]llegations of retaliation for seeking legal counsel . . . [because] [Plaintiff] was reportedly singled out for a urinalysis by Warden Santistevan, and despite having prescriptions that could affect the test results, he was written up," ("NOC-3"). Third Am. Compl. ¶ 119.c, ECF No. 7; Third Am. Compl. Ex. 3 at 1-4, ECF No. 7-3. Plaintiff's counsel sent NOC-3 to the NMCD, the Risk Management Claims Bureau, Brian Fitzgerald at the NMCD Office of General Counsel, the Warden's Office for LCCF, Governor Michelle Lujan-Grisham, Alisha Tafoya Lucero at the Office of the Secretary, and the Lea County Clerk's Office. Third Am. Compl. Ex. 3 at 1, ECF No. 7-3. Of the NMCD Defendants, only Defendant Lucero was a named recipient of NOC-3. *See id.*

"On or around January 2022, [Plaintiff's] health began to rapidly deteriorate. Third Am. Compl. ¶ 40, ECF No. 7. "He continued to suffer extreme back pain" and no actions were taken at the time "to provide him with proper diagnostics and treatment." *Id.* "Wexford Defendants offered [Plaintiff] . . . Tylenol and Lyrica, neither of which provided [Plaintiff] with adequate pain relief." *Id.* ¶ 45. "Around this time, [Plaintiff] began requiring assistance from other prisoners to perform basic daily living skills such as getting up, showering, dressing, eating, and using the bathroom." *Id.* ¶ 42. Plaintiff's request to move to a lower-level cell was refused. *Id.* ¶ 44.

"On or around January 6, 2022, [Plaintiff] had an X-ray of his thoracic spine, which showed that he had degenerative intervertebral disc space narrowing." *Id.* ¶ 48. Plaintiff asserts "Defendants refused to provide [Plaintiff] with responsive medical care." *Id.* Plaintiff attributes this in part to intentional understaffing on the part of Wexford, asserts understaffing violated Wexford's contract with NMCD, and claims NMCD was "aware that Wexford operated without appropriate and sufficient staffing." *Id.* ¶¶ 49-51.

6

"On or around January 7, 2022, [Plaintiff] had a physical therapy evaluation . . . based on his complaints of joint pain, stiffness, and decreased endurance." *Id.* ¶ 52. "At this point, [Plaintiff] was unable to walk independently and had to use a wheelchair or cane for mobility . . . [and he] required assistance of other prisoners to get dressed." *Id.* ¶ 54. Plaintiff received an MRI the same day that "revealed spinal disc bulges at L4 and L5 with degenerative disc disease." *Id.* ¶ 53. "On or around January 13, 2022, [Plaintiff's] lab work revealed . . . increased inflammation suggestive of infection." *Id.* ¶ 55.

Also on January 13, 2022, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford addressing [Plaintiff's] deteriorating health . . . , including severe back pain and weight loss[,] [his confinement] to a wheelchair, [his] relian[ce] on other inmates for basic needs, and [that] his medical grievances were ignored," ("NOC-4"). *Id.* ¶ 119.d; Third Am. Compl. Ex. 4 at 1-6, ECF No. 7-4. Plaintiff's counsel sent NOC-4 to the NMCD, the Risk Management Claims Bureau, Brian Fitzgerald at the NMCD Office of General Counsel, the Warden's Office for LCCF, Governor Michelle Lujan-Grisham, Wexford Health Sources, Inc., Alisha Tafoya Lucero at the Office of the Secretary, the Lea County Clerk's Office, and New Mexico Counties. Third Am. Compl. Ex. 4 at 1, ECF No. 7-4. Of the NMCD Defendants, only Defendant Lucero was a named recipient of NOC-4. *See id.*

On or around January 18, 2022, "[Plaintiff] was referred for a neurological evaluation for acute lower back pain . . . [but] Defendants refused to send [Plaintiff] to the evaluation." Third Am. Compl. ¶ 56, ECF No. 7. "At this point, [Plaintiff] was wheelchair-bound and unable to walk." *Id.* "On or around January 28, 2022, Wexford . . . sent [Plaintiff] for a neurology appointment at UNM Neurology Clinic." *Id.* ¶ 57. On January 31, 2022, Plaintiff received a referral for an MRI

to rule out spinal infection. *Id.* ¶ 58. He was sent for the MRI on February 4, 2022 and immediately admitted to the University of New Mexico Hospital. *Id.* Plaintiff's symptoms suggested "a vertebral infection warranting immediate medical action." *Id.* ¶ 59 Plaintiff alleges "Defendants delayed and denied [Plaintiff's] treatment." *Id.* Plaintiff

> now suffers from chronic discitis/osteomyelitis secondary to Serratia marcescens extending from T11-L1 with the complete destruction of the T12 vertebral body causing spinal cord compression. [Plaintiff] also has cauda equina syndrome requiring T10-T12 instrumental infusion, T11-L1 laminectomy, Left T12 costotransversectomy, and T12 corpectomy with the placement of a corpectomy cage.

*Id.* ¶ 60.

On March 10, 2022, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford address[ing] a spinal infection that led to a two-week hospitalization[,] . . . [that Plaintiff's] [c]omplaints about severe pain were ignored, which could have been diagnosed and treated earlier to avoid hospitalization[,] . . . [and raising] [i]ssues with the violation of 1st Amendment rights due to interference with attorney-client communication," ("NOC-5"). *Id.* ¶ 119.e; Third Am. Compl. Ex. 5 at 1-5, ECF No. 7-5. Plaintiff's counsel sent NOC-5 to the NMCD, the Risk Management Claims Bureau, Brian Fitzgerald at the NMCD Office of General Counsel, the Warden's Office for LCCF, Governor Michelle Lujan-Grisham, Alisha Tafoya Lucero at the Office of the Secretary, the Lea County Clerk's Office, and the GEO Group. Third Am. Compl. Ex. 5 at 1, ECF No. 7-5. Of the NMCD Defendants, only Defendant Lucero was a named recipient of NOC-5. *See id.*

On November 10, 2022, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford addressing multiple requests for cirrhosis treatment, which were reportedly ignored . . . [and Plaintiff being] blocked from making calls to his attorneys, which was cited as a violation of

his constitutional rights," ("NOC-6"). Third Am. Compl. ¶ 119.f, ECF No. 7; Third Am. Compl. Ex. 6 at 1-4, ECF No. 7-6. Plaintiff's counsel sent NOC-6 to the NMCD, the Risk Management Claims Bureau, the NMCD Office of General Counsel, the Warden's Office for LCCF, Alisha Tafoya Lucero at the Office of the Secretary, the Lea County Clerk's Office, and Wexford Health Services, Inc. Third Am. Compl. Ex. 6 at 1, ECF No. 7-6. Of the NMCD Defendants, only Defendant Lucero was a named recipient of NOC-6. *See id.*

On February 1, 2023, "Plaintiff through counsel submitted an Informal Complaint to NMCD related to ongoing medical negligence beginning on January 9, 2023, when [Plaintiff] experienced spasms, severe pain, and mobility issues post-surgery, yet did not receive adequate medical attention despite the known severity of his condition." Third Am. Compl. ¶ 119.g, ECF No. 7; Third Am. Compl. Ex. 7 at 1, ECF No. 7-7. NMCD is the only recipient of the Informal Complaint. *See* Third Am. Compl. Ex. 7 at 1, ECF No. 7-7.

Also on February 1, 2023, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford addressing retaliation against [Plaintiff] for filing grievances and legal claims . . . [and] not[ing] that he was experiencing severe pain and spasms for which he sought medical attention which was denied," ("NOC-7"). Third Am. Compl. ¶ 119.h, ECF No. 7. Plaintiff's Third Amended Complaint does not indicate which entities received this NOC besides "NMCD and Wexford." *See* Third Am. Compl. ¶ 119.h. The Exhibit submitted by Plaintiff does not contain a list of recipients. *See* Third Am. Compl. Ex. 8, ECF No. 7-8.

On March 30, 2023, "Plaintiff through counsel submitted a [NOC] to both NMCD and Wexford related to an incident on March 17, 2023 [in which Plaintiff] was hospitalized following an assault where he fell downstairs, suffering multiple broken ribs, a ruptured kidney, and

9

exacerbated back pain due to pre-existing conditions," ("NOC-8"). Third Am. Compl. ¶ 119.i, ECF No. 7; Third Am. Compl. Ex. 9 at 1-3, ECF No. 7-9. Plaintiff asserts that "[t]he medical response at the facility was minimal and inadequate, further constituting medical neglect and deliberate indifference." Third Am. Compl. ¶ 119.i, ECF No. 7; *see* Third Am. Compl. Ex. 9 at 2, ECF No. 7-9. Plaintiff's counsel sent NOC-8 to the NMCD, the Risk Management Claims Bureau, the NMCD Office of General Counsel, the Warden's Office for Otero County Prison Facility, Alisha Tafoya Lucero at the Office of the Secretary, and Wexford Health Services, Inc. Third Am. Compl. Ex. 9 at 1, ECF No. 7-9. Of the NMCD Defendants, only Defendant Lucero was a named recipient of NOC-8. See *id.*

On May 30, 2023, "Plaintiff through counsel submitted a [NOC] to NMCD related to ongoing retaliation and failure to provide medical care including pain management," ("NOC-9"). Third Am. Compl. ¶ 119.j, ECF No. 7; Third Am. Compl. Ex. 10 at 1-3, ECF No. 7-10. Plaintiff's counsel sent NOC-9 to the NMCD, the Risk Management Claims Bureau, Mark Lovato at the NMCD Office of General Counsel, Ronald Martinez at the Warden's Office for Southern New Mexico Correctional Facility (SNMCF), Alisha Tafoya Lucero at the Office of the Secretary, and Wexford Health Services, Inc. Third Am. Compl. Ex. 10 at 1, ECF No. 7-10. Of the NMCD Defendants, Defendant Lucero, Defendant Lovato, and Defendant Martinez were named recipients of NOC-9. *See id.*

Plaintiff also includes in his Third Amended Complaint ("Complaint") accounts of Wexford's practices in New Mexico in the early 2000s, prior to their current contract with NMCD, and Wexford's practices in other states from the late 1990s to 2021. ECF No. 7 ¶¶ 74.a-u, 83.a-n, 90.a-h., 103.a-h, 110, 111.

## II. Legal Standard

### A. Motion to Dismiss

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citation omitted).

While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (cleaned up).

### B. Qualified immunity

The doctrine of qualified immunity protects government officials sued in their individual capacity from liability for monetary damages unless their actions violate a "clearly established"

statutory or constitutional right. *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). "A plaintiff can demonstrate that a constitutional right is clearly established 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.'" *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)).

To overcome an assertion of qualified immunity, "[t]he plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019) (quoting *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1212-13 (10th Cir. 2019)).

## C. Supervisory liability

"[T]o establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Brown v. Montoya*, 662 F.3d 1152,

12

1163–64 (10th Cir. 2011) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

### D. Deliberate Indifference

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (citation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment [under a theory of deliberate indifference] for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. While a prison official "unaware of a substantial risk of harm to an inmate" cannot be held liable because the "risk was obvious and a reasonable prison official would have noticed it," an official can be held liable if "circumstantial evidence" demonstrates the official "had the requisite knowledge of a substantial risk." *Id.* at 841-42. Finally, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"An Eighth Amendment violation [for deliberate indifference in a medical care case] requires both a sufficiently serious medical need and deliberate indifference by the health-care provider." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (citing *Estelle v. Gamble*, 429

13

U.S. 97, 106 (1976)). "Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation." *Id.* (citations omitted).

## III. Discussion

Plaintiff alleges that "above-named Defendants each possessed responsibility for the decisions that resulted in the violation of [Plaintiff's] constitutional right to be free from cruel and unusual punishment regarding the deliberate indifference to his serious medical needs while in NMCD custody." Third Am. Compl. at 57, ECF No. 7.[3] As a result of "[t]he deliberate indifference" of Defendants, Plaintiff alleges he suffered

> worsening severe, prolonged, and unnecessary pain . . . develop[ed] worsening cirrhosis and degenerative disc disease . . . suffer[ed] from delayed diagnoses of these conditions . . . develop[ed] chronic discitis/osteomyelitis and spinal cord compression . . . [and] suffer[ed] from cauda equina syndrome, requiring many painful and severe medical procedures to address . . . .

*Id.* Plaintiff asserts that these "harms were sufficiently serious injuries that a reasonable doctor or patient would find them important and worthy of immediate treatment" and "[w]ithout treatment, [Plaintiff's] worsening infection caused him to lose the ability to walk or take care of his most basic needs." *Id.* at 57-58.

Plaintiff alleges Defendants are liable as supervisors because

> [t]he Wexford medical staff . . . were each subordinates of the individual Wexford, GEO and NMCD Defendants . . . [and] agents of Wexford, GEO and NMCD, and the individual Defendants each have supervisory authority over them . . . the constitutional violations of Wexford medical staff properly serve as the basis for each of the Wexford, GEO and NMCD Defendants' supervisory liability.

---

[3]   After paragraph 180 on page 56, Plaintiff renumbers his paragraphs starting with 166, resulting in two paragraph 166s, two paragraph 167s, etc. *See* Third Am. Compl. at 55-60, ECF No. 7. The Court uses pages numbers for any paragraph between 166 and 180 inclusive.

*Id.* ¶ 153. Plaintiff continues that "[t]hrough their failures to act despite having the duty and authority to do so, each of the Wexford, GEO and NMCD individual defendants personally implemented, utilized, and promulgated Wexford's unconstitutional practices and policies." *Id.* ¶ 154.

Plaintiff also asserts a more direct theory of deliberate indifference that does not rely on supervisory liability. *E.g.,* Third Am. Compl. at 57, ECF No. 7 ("[E]ach of the above-named Defendants was aware of [Plaintiff's] severe and escalating pain, yet took essentially no action to address this anguish, which constitutes deliberate indifference to his pain and deteriorating medical condition."). The Court therefore evaluates deliberate indifference via supervisory liability and direct liability. *Infra* III.A, III.B.

Plaintiff denies that Defendants are entitled to qualified immunity "because of the well-documented 10th Circuit precedent notifying medical and prison personnel that the Eighth Amendment is violated when such personnel fail to take reasonable measures to provide a patient with access to medical attention and/or deny medical care to a patient with serious medical needs." *Id.* at 58.

In their Motion, Defendants argue that (1) Plaintiff makes insufficient allegations that they had direct notice of Plaintiff's health condition, ECF No. 49 at 18-19, (2) the NOCs do not provide notice of ongoing untreated medical condition, *id.* at 19, (3) that Plaintiff's disagreement "with the course of treatment or claim that the treatment was ineffective, . . . does not rise to the level of deliberate indifference," *id.* at 20, and (4) that since the supervisory liability standard of awareness of a pattern or practice of constitutional violations by Wexford is actual, not constructive, notice, and since Plaintiff's basis for NMCD awareness are older, non-pertinent reports, Plaintiff does not

15

lodge sufficient allegations to establish supervisory liability, *id.* at 20-22.

Defendants further argue that they are entitled to qualified immunity because there is no "clearly established law that NMCD Defendants should . . . rely on such temporarily [sic] remote conduct to assess current practices." *Id.* at 21.

In his Response, Plaintiff argues that, since "actual knowledge may be proven by circumstantial evidence, including evidence that 'the risk was obvious,'" "direct notification" is not required, Resp. at 7, ECF No. 61 (citing *Farmer*, 511 U.S. at 842) (emphasis removed). Plaintiff then points to his identification in the Complaint of each Defendants' "specific role and the specific means by which they acquired knowledge." *Id.* at 11-12. Plaintiff next argues that the NOCs sent between November 29, 2021 and May 30, 2023 provided "escalating, real-time notice" to the "NMCD and State leadership recipients" that Plaintiff's "condition was deteriorating, that his requests for care were not being addressed, and that he faced a substantial risk of serious harm." *Id.* at 8-9. Plaintiff also argues that treatment "does not defeat a deliberate indifference claim" because the question is "whether treatment was so grossly deficient . . . as to constitute deliberate indifference." *Id.* at 10-11. Finally, Plaintiff argues that the Complaint alleges a "comprehensive pattern [of constitutional violations by Wexford] spanning multiple states and decades" which makes contracting with Wexford an obvious risk. *Id.* at 14-16. Plaintiff also argues his assertion of supervisory liability is adequate because the Complaint "identifies the specific role, notice, and authority attributed to each defendant and the failure to act in response," satisfying *Dodds*' requirement for an "affirmative link," 614 F.3d at 1199-1200, that "maintained a system of non-response and non-oversight that directly enabled the ongoing constitutional deprivation," Resp. at 18, ECF No. 61.

Plaintiff asserts that Defendants are not entitled to qualified immunity because "deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Id.* (quoting *Mata v. v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005)).

In their Reply, Defendants maintain that even if a risk is obvious, actual knowledge of the risk is required to establish deliberate indifference. ECF No. 67 at 2 (citing *Farmer*, 511 U.S. at 842). Defendants also argue that even if the NOCs demonstrate notice of risk, Plaintiff fails to plead that Defendants "subjectively drew the inference that a risk of harm from inadequate medical care existed." *Id.* at 3-4 (citing *Farmer*, 511 U.S. at 837). Defendants further argue that Defendants' supervisory authority is insufficient to establish deliberate indifference and that Plaintiff must show more than that the Defendants "occupied an administrative role" to establish a 42 U.S.C. § 1983 claim. *Id.* at 7. Finally, Defendants argue that Plaintiff's allegation of insufficient oversight of Wexford fails because he does not "plausibly establish knowledge of systemic unconstitutional care within NMCD facilities during the relevant period of Plaintiff's incarceration." *Id.* at 10-12.

To summarize, Plaintiff seeks to impose liability on Defendants, who are all supervisory NMCD and/or State of New Mexico employees, in their individual capacity through two theories of deliberate indifference. Plaintiff asserts that Defendants (1) are liable as supervisors for failing to properly oversee Wexford, the medical provider for NMCD during Plaintiff's incarceration, and (2) are directly liable for failing to intervene to provide adequate care to Plaintiff.

Defendants argue that (1) Plaintiff has not plausibly asserted constitutional violations by Wexford or awareness of alleged violations that would implicate supervisory liability, and (2) Plaintiff has not plausibly alleged Defendants knew Plaintiff had an inadequately treated serious

17

medical need.

Defendants are entitled to qualified immunity as to both theories because, although Plaintiff has a clearly established right against deliberate indifference by those responsible for his care when he is experiencing a serious medical need, *Mata*, 427 F.3d at 749 ("there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right"), Plaintiff fails to plausibly allege a violation of this right by these Defendants, *Riggins*, 572 F.3d at 1107 ("The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."). The Court will grant Defendants' motion and dismiss Plaintiff's claims against them.

### A. Plaintiff fails to allege Defendants acted with the state of mind required to establish supervisory liability.

Plaintiff argues that he has a claim of supervisory liability against NMCD Defendants because they are responsible for overseeing Wexford, the medical provider for NMCD at the time of Plaintiff's incarceration. Third Am. Compl. ¶¶ 152-55, ECF No. 7; Resp. at 14-18, ECF No. 61. Defendants argue that Plaintiff fails to plausibly allege on-going constitutional violations by Wexford or awareness of such violations by Defendants and therefore they cannot be held liable as supervisors of Wexford. Mot. at 20-22, ECF No. 49; Reply at 10-12, ECF No. 67.

To establish supervisory liability Plaintiff must plausibly establish that "(1) the [Defendants] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

18

The state of mind required for the constitutional deprivation alleged is deliberate indifference; therefore Plaintiff must plausibly allege Defendants were deliberately indifferent to the promulgation, creation, or implementation of, or their responsibility for, a policy that caused constitutional harm. *See id.* at 1204 ("[A]fter *Iqbal*, [p]laintiff can no longer succeed on a § 1983 claim against [d]efendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges."). Because Plaintiff does not plausibly claim that Defendants acted with the state of mind required to establish the alleged constitutional deprivation, Plaintiff cannot establish supervisory liability and therefore cannot establish that Defendants violated Plaintiff's constitutional rights via their oversight of Wexford. Defendants are entitled to qualified immunity.

Deliberate indifference means Defendants had knowledge of the risk of deprivation and disregarded that risk. *Farmer*, 511 U.S. at 837. Knowledge of risk can be inferred from circumstances. *Id.* at 842. But there must still be a plausible allegation that Defendants were exposed to information concerning the risk. *See id.* at 842–43. ("For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."). Plaintiff cannot argue that if a reasonable official in a Defendant's situation would have been exposed to information concerning the risk, the Court can assume they have been exposed. *Id.* at 841-42

19

("[W]e cannot accept petitioner's argument that *Canton* compels the conclusion here that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it.").

There is nothing here that permits the Court to infer Defendants had knowledge of a systemic risk of harm to Plaintiff due to Wexford's practices *and* disregarded that risk. Plaintiff alleges a litany of problems with Wexford, including staffing shortfalls, denial and delay of referrals, reliance on undertrained staff, and failure to identify and treat emergent infections. *E.g.,* Third Am. Compl. ¶¶ 49-51, 61-67, 113, ECF No. 7. But Plaintiff does not allege direct knowledge of those problems. *See generally* Third Am. Compl. Instead, Plaintiff makes three attempts to show that circumstances permit the inference that Defendants must have known of alleged constitutional violations by Wexford. All fail.

Plaintiff initially attempts to establish direct supervisory liability by alleging that Defendants have supervisory authority over Wexford staff members and that the NOCs sent to Defendants are proof they had knowledge of Wexford's alleged constitutional violations, together rendering them liable for constitutional violations of Wexford medical staff. Plaintiff lists the seven named Defendants in this Motion, their respective responsibilities relative to NMCD and/or Wexford and whether they received the NOCs, Resp. at 11-12, ECF No. 61, then argues they "affirmatively maintained a system of non-response and non-oversight" creating an "affirmative link" that satisfies *Dodds*, *id.* at 17-18. That is not the standard.

First, Defendants' formal responsibilities do not plausibly establish supervisory liability because the Court cannot infer Defendants knew of alleged constitutional violations simply

20

because Defendants have some authority over or responsibility for Wexford. That would be impermissibly assuming a reasonable official in the Defendants place would have acquired the knowledge. *Farmer*, 511 U.S. at 841-42.[4] Plaintiff must instead show Defendants were exposed to the required knowledge.

Second, assuming Plaintiff plausibly alleges the Defendants received the NOCs, they do not contain information about a pattern of constitutional violations by Wexford.[5] The NOCs contain information about Plaintiff's experience with Wexford, not widespread actions that indicate the type of constitutional problems required to establish supervisory liability. *See e.g.,* Third Am. Compl. Ex. 1, ECF No. 7-1 ("The actions and inactions of the NMCD and Wexford are in plain violation of AUGUST VELASQUEZ's rights under state and federal law . . . ."). Therefore,  receipt of the NOCs cannot have exposed Defendants to the requisite knowledge of risk. Defendants' supervisory positions and receipt of the NOCs does not plausibly allege the deliberately indifferent state of mind required for supervisory liability.

Next, Plaintiff attempts to plausibly allege Defendants' knew of Wexford's alleged constitutional violations through historical reports, which he asserts show a past pattern of constitutional violations by Wexford about which Defendants must be aware and which indicate

---

[4]     Nor can Plaintiff proceed under a theory of respondeat superior based on Defendants' authorities over Wexford. *Dodds*, 614 F.3d at 1197. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

[5]     "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes")) and *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.")).

current violations. The historical reports, some from newspaper articles, others from court cases, cover issues across the United States over a period of more than twenty years. *E.g.*, Third Am. Compl. ¶¶ 74.a-u, 83.a-n, 90.a-h., 103.a-h, 110, 111, ECF No. 7. At no point does Plaintiff allege that Defendants were aware of the litany of historical reports listed by Plaintiff in the Complaint. *See generally* Third Am. Compl, ECF No. 7; Resp., ECF No. 61. Instead, Plaintiff argues Defendants should have known about Wexford's alleged pattern of constitutionally deficient care because Wexford's "pattern of providing constitutionally deficient care" is "decades-long" and "well-publicized." Resp. at 14, ECF No. 61. The Court requires more than a reasonable-person standard. *Farmer*, 511 U.S. at 841-42. Without a plausible allegation that Defendants were aware of the historical reports, the reports are immaterial—even supposing the reports did have some bearing on current issues.

Last, Plaintiff attempts to show Defendants knew of Wexford's supposed constitutional violations through contemporary reports which he alleges show a current pattern of constitutional violations by Wexford. Plaintiff alleges that Defendants knew of contemporary problems with Wexford through

> prior internal and legislative reports, news coverage, weekly and quarterly meetings/calls amongst each other and with other Wexford medical staff, quarterly tracking documents, quality assurance program reports, monthly continuous quality improvement meetings, statistical reports submitted to the Health Services Bureau, training materials, continuous quality improvement audits, American Correctional Association audits, National Commission on Correctional Healthcare audits, performance improvement reports, corrective action plans, prisoner grievances, health services request forms, and individual inmate files, including [Plaintiff's] file.

22

Resp. at 16, ECF No. 61 (citing Third Am. Compl. ¶ 129, ECF No. 7).[6] Plaintiff argues this is not

conclusory because he has identified the "specific *types* of reports and communications through

which each [D]efendant was informed." *Id.* at 16 (emphasis added). The Court does not consider

whether Plaintiff has alleged a specific type of report. The Court considers whether Plaintiff has

alleged specific knowledge or information contained in the report and alleged Defendants were

exposed to the report. Only then could knowledge by Defendants be assumed through

circumstance. *Farmer*, 511 U.S. at 842.

Plaintiff's implication is clear: Defendants have official responsibilities by which

knowledge about this general subject is transferred to them; therefore they must be aware of the

allegations made by Plaintiff. But Plaintiff has not plausibly alleged the contemporary reports

contain sufficient information to ascertain a pattern of constitutional violations by Wexford, nor

has he plausibly alleged that Defendants saw these reports. Plaintiff is asking the Court to assume

that the reports contain information showing a pattern of constitutional violations, that Defendants

must have received these reports as part of their official duties, and that Defendants should have

recognized this pattern. Those assumptions go far beyond the *Farmer* standard. *See* 511 U.S. at

841-43. The Court cannot infer from Plaintiff's allegations that the contemporary reports contain

information about a pattern of constitutional violations by Wexford, nor can the Court infer

Defendants were exposed to such knowledge, even if the reports did contain it, simply because

---

[6] There is a discrepancy with this list. In his Response Plaintiff appears to argue these means of acquiring knowledge permit the Court to infer Defendants knew of Wexford's pattern of constitutional violations. Resp. at 15-16, ECF No. 61. But in the Third Amended Complaint, Plaintiff alleges these means are how Defendants knew of an "epidemic of infections, osteomyelitis and sepsis among NMCD inmates," ECF No. 7 ¶¶ 128-29. Regardless, the outcome of the Court's analysis is the same.

they occupy certain positions of authority and responsibility.

The Court must see plausible allegations that the risk itself—in this case Plaintiff suffering serious harm due to a pattern of constitutionally inadequate care—was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" and "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Farmer*, 511 U.S. at 842. Plaintiff fails to do so; therefore his attempt to establish supervisory liability fails. Plaintiff does not plausibly allege Defendants violated Plaintiff's constitutional rights via supervisory liability and there are therefore entitled to qualified immunity.

**B. Plaintiff fails to plausibly allege Defendants had the requisite knowledge of inadequate care for Plaintiff's ongoing medical needs to hold them directly liable under a theory of deliberate indifference.**

Plaintiff brings his claims against Defendants in their individual capacity. Third Am. Compl. ¶ 8, ECF No. 7. Plaintiff argues that Defendants bear direct liability for the harm caused to Plaintiff by their deliberate indifference. *Id.* at 57, 58. Plaintiff alleges that Defendants were provided notice of Plaintiff's on-going harm via the NOCs and that Defendants "allowed the situation to continue without meaningful intervention." Resp. at 8-9, ECF No. 61.

Defendants argue that the NOCs did not provide notice of inadequate care, Reply at 3-7, ECF No. 67, that Plaintiff fails to make sufficient allegations of notice of inadequate care, Mot. at 18-19, ECF No. 49, and that Plaintiff fails to allege that Defendants "drew the inference that Plaintiff was not receiving adequate medical care," Reply at 2-4, ECF No. 67 (citing *Farmer*, 511 U.S. at 842). Defendants are correct. Plaintiff fails to plausibly allege Defendants knew of the risk

of harm to Plaintiff; therefore, Defendants cannot be held liable via deliberate indifference.

To show deliberate indifference to a medical need, the plaintiff must meet both an objective and a subjective standard. *Mata*, 427 F.3d at 751. First, the plaintiff must demonstrate his medical need is objectively "sufficiently serious." *Id.* A medical need is sufficiently serious "if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (citation omitted). Here, Defendants elected not to "address the objective component of the deliberate indifference test." Mot. at 17, ECF No. 49. The Court assumes Defendants concede that Plaintiff's condition is sufficiently serious. And, even if they did not, Plaintiff has made plausible allegations that his condition, requiring hospitalizations, Third Am. Compl., Exhibit 5 at 2, ECF No. 7-5, and MRIs, Third Am. Compl. ¶ 53, ECF No. 7, is sufficiently serious.

As to the subjective standard, the plaintiff must plausibly allege that the official is (1) "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) that the official has "draw[n] the inference." *Farmer*, 511 U.S. at 837. If both are true, then the plaintiff must show that the official failed "to take reasonable measures to abate" the risk. *Id.* at 847.[7]

---

[7]     In medical treatment deliberate indifference cases where the defendant is a medical provider or a corrections officer interacting directly with the plaintiff, the subjective component of the deliberate indifference test can be satisfied by "showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the plaintiff's] medical condition." *Mata*, 427 F.3d at 755. This is because prison employees with medical training can observe a plaintiff's symptoms and the court can assume, based on their training, the employees know what constitutes adequate care. *Id.* at 755-57. This standard is appropriate whether a plaintiff is experiencing an acute medical episode like a heart attack, *id.*, is being treated by the same provider over several days, *Boretti v.*

Knowledge "of the constitutionally infirm condition [may be] based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya*, 516 F.3d at 916 (citing *Farmer*, 511 U.S. at 842.). But "[a]n official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Id.* (citing *Farmer*, 511 U.S. at 844).

In medical treatment cases, some amount of treatment is insufficient to defeat deliberate indifference since inadequate treatment may still constitute an Eighth Amendment violation. *See Oxendine*, 241 F.3d at 1278-79 (holding the inmate-plaintiff alleged sufficient facts to support a claim of deliberate indifference against a doctor and physician's assistant where the unqualified doctor and physician's assistant reattached the plaintiff's finger and refused to obtain "specialized medical treatment" before surgery and after the plaintiff's finger turned "gangrenous").

Here, Plaintiff fails to plausibly allege Defendants Salazar, Asonganyi, Stradford, or Chavez had knowledge of Plaintiff's medical needs at all, let alone that his treatment was inadequate. Plaintiff also fails to plausibly allege that Defendants Lovato, Martinez, and Lucero, though plausibly aware of Plaintiff's treatment, were subjectively aware he received inadequate

---

*Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (infirmary refused to treat inmate-plaintiff's wound or provide dressing or pain medications), or is receiving indefinite care, *Hunt v. Uphoff*, 199 F.3d 1220, 1222-24 (10th Cir. 1999) (inmate-plaintiff alleged sufficient facts to make an Eighth Amendment claim based on deliberate indifference to his diabetes and hypertension).

Here, however, Defendants are not medical providers or corrections officers who interact directly with the Plaintiff. Defendants are more akin to an overseeing official like the sheriff in *Tafoya v. Salazar*, 516 F.3d 912, 915-16 (10th Cir. 2008) (holding the sheriff was deliberately indifferent to the risk of sexual assault at the jail for which he was responsible), since they have responsibility for NMCD but do not interact directly with inmates. The Court therefore finds the above standard inapplicable and instead applies the *Farmer* standard that requires Defendants to know that the risk was inordinate yet unreasonably fail to act. 511 U.S. at 837; *Tafoya*, 516 F.3d at 916.

care or failed to take reasonable measures. Plaintiff does not plausibly allege NMCD Defendants violated his constitutional rights, therefore all NMCD Defendants are entitled to qualified immunity and all claims against NMCD Defendants are dismissed.

**(1)** ***Plaintiff does not allege that Defendants Salazar, Asonganyi, Stradford, or Chavez received the NOCs.***

First, Plaintiff fails to plausibly allege that Defendants Salazar, Asonganyi, Stradford, and Chavez knew about his care because he fails to plausibly allege they received the NOCs. The NOCs are the only means by which Defendants could have known about Plaintiff's treatment and thereby meet the subjective awareness component of the deliberate indifference standard. *See* Third Am. Compl. ¶ 119, ECF No. 7 ("By virtue of the numerous Notices of Claims and informal complaints, each of the Wexford, GEO and NMCD individual Defendants also knew of [Plaintiff's] persistent expressions of worsening pain, his debilitated physical appearance, and his rapid physical deterioration."); *see also* Resp. at 8-9, ECF No. 61 ("These NOCs provided escalating, real-time notice to the identified NMCD and State leadership recipients that Mr. Velasquez's condition was deteriorating, that his requests for care were not being addressed, and that he faced a substantial risk of serious harm.") (citing Third Am. Compl. ¶¶ 119.a, b, d, e, f). Therefore, where Plaintiff failed to plausibly allege Defendants received NOCs, Defendants cannot be held liable under the deliberate indifference standard.

Defendant Salazar, the Director of the NMCD Office of Inspector General, is not a named recipient of any of the NOCs. Third Am. Compl., Ex. 1-10, ECF No. 7-1 – 7-10. Nor is the Director of the NMCD Office of Inspector General, the Inspector General, or the NMCD Office of the Inspector General. *Id.* Plaintiff does not plausibly allege Defendant Salazar received any NOCs,

therefore Defendant Salazar could not have known of Plaintiff's medical needs, and Plaintiff cannot plausibly allege Defendant Salazar was deliberately indifferent. Defendant Salazar is entitled to qualified immunity and claims against Defendant Salazar in her individual capacity are therefore dismissed.

Defendant Asonganyi, the Health Services Administrator for NMCD, is not a named recipient of any of the NOCs. *Id.* Nor is the Health Service Administrator or the Office of the Health Service Administrator for NMCD. *Id.* Plaintiff does not plausibly allege Defendant Asonganyi received any NOCs, therefore Defendant Asonganyi could not have known of Plaintiff's medical needs, and Plaintiff cannot plausibly allege Defendant Asonganyi was deliberately indifferent. Defendant Asonganyi is entitled to qualified immunity and claims against Defendant Asonganyi in his individual capacity are therefore dismissed.

Defendant Stradford, the NMCD Bureau Chief, is not a named recipient of any of the NOCs. *Id.* Nor is the NMCD Bureau Chief or the Office of the NMCD Bureau Chief. *Id* Plaintiff does not plausibly allege Defendant Stradford received any NOCs, therefore Defendant Stradford could not have known of Plaintiff's medical needs, and Plaintiff cannot plausibly allege Defendant Stradford was deliberately indifferent. Defendant Stradford is entitled to qualified immunity and claims against Defendant Stradford in his individual capacity are therefore dismissed.

Defendant Chavez, the Complaint Risk Management Director, New Mexico Risk Division, is not a named recipient of any of the NOCs. *Id.* The Risk Management Claims Bureau received all NOCs. *Id.* Plaintiff, however, makes only a conclusory allegation that Defendant Chavez received the NOCs sent to the Risk Management Claims Bureau. Third Am. Compl. ¶ 120, ECF No. 7 ("Each of the following individuals received all of the above NOCs: . . . f. Jeannette Chavez,

28

Risk Management Director, New Mexico Risk Management Division."). Plaintiff asks this Court to assume Defendant Chavez's role meant she both received and reviewed all NOCs sent to the Risk Management Claims Bureau. Plaintiff does not even explain what the Risk Management Claims Bureau does, let alone allege that Defendant Chavez's role means she receives and reviews all NOCs. *See generally* Third Am. Compl., ECF No. 7. Without more, that is insufficient for the Court to infer she had the requisite knowledge of Plaintiff's serious medical needs to establish deliberate indifference. Defendant Chavez is entitled to qualified immunity and claims against Defendant Chavez in her individual capacity are therefore dismissed.

As claims against Defendants Salazar, Asonganyi, Stradford, and Chavez have been dismissed, the Court now turns to Defendants Lovato, Martinez, and Lucero.

**(2)** ***Of those Defendants who were plausibly aware of Plaintiff's serious medical needs, Plaintiff fails to allege any had knowledge of inadequate care or any failed to take reasonable measures.***

(a) *Defendant Lucero*

Defendant Lucero is a named recipient of NOC-3 through NOC-6, NOC-8, and NOC-9. Third Am. Compl., Exs. 3-6, 9, 10, ECF Nos. 7-3 – 7-6, 7-9, 7-10. NOC-4, NOC-6, NOC-8, and NOC-9 allege serious ongoing medical needs. Third Am. Compl., Exs. 4, 6, 9, 10, ECF Nos. 7-4, 7-6, 7-9, 7-10. The remaining NOCs do not allege on-going medical issues and are therefore not relevant. *See* Third Am. Compl., Exs. 3, 5, ECF Nos. 7-3, 7-5.

NOC-4, filed January 13, 2022, alleges that

[Plaintiff's] health is rapidly deteriorating. He is suffering extreme backpain which NMCD and Wexford are completely ignoring other than Tylenol and Lyrica which offers no pain relief. He needs to be sent to a specialist to determine the source of his pain and treat it accordingly.

29

> He is now confined to a wheelchair. . . . His medical grievances have been ignored. He has lost 40 lbs. and is unable to eat due to severe nausea. His symptoms sound remarkably similar to the symptoms expressed by the 20+ inmates suffering systemic infections that led to hospitalizations and/or death . . . .

ECF No. 7-4 at 1-2. NOC-6, filed ten months later, November 10, 2022, alleges that

> [Plaintiff] has submitted multiple requests for cirrhosis treatment. He reports that staff at LCCF [t]ell him that there's no place for him to be sent for treatment, despite [Plaintiff] having knowledge that other inmates receive treatment. [Plaintiff] reported that he has lost 8 lbs. in the last 2 months.

ECF No. 7-6 at 1-2. NOC-8, filed March 30, 2023, four and a half months after NOC-6, alleges

that

> [Plaintiff] has a history of osteomyelitis in his back. On or around March 17, 2023, [Plaintiff] was hospitalized at the University of El Paso hospital after an assault, where [Plaintiff] fell down the stairs. . . . The injuries resulting from his fall were four broken ribs, a ruptured kidney, and his back pain is now even more severe. While at OCPF, [Plaintiff] is only receiving a small dose of Tylenol, which is not enough to manage his severe pain. . . .
>
> [Plaintiff] is in extreme pain as a result of his broken ribs, ruptured kidneys, and osteomyelitis and the refusal of proper care [for] his pain, by Wexford and NMCD. The medical personnel have begun refusing him Tylenol and Lyrica, which is all he has been allowed for pain management despite severe pain from his prior osteomyelitis and associated spinal damage, along with the severe beating resulting in 1 week in the ICU.

ECF No. 7-9 at 2. NOC-9, filed May 30, 2024, fourteen months after NOC-8, alleges that

> [Plaintiff] has endured significant pain, persistently at 7/10 pain level and often reaching a severity of 9/10 pain level. While at GCCF, he received Oxycodone, which was somewhat effective at managing his pain. However, upon his transfer to WNMCF, his pain management regimen was altered without his knowledge by Dr. Dennig. The new prescription included only Tylenol and Lyrica, medications that proved inadequate for his pain levels. He is now at SNMCF where he is receiving no pain management upon the orders of Dr. Castrejon. This inconsistency and reduction in effective pain management have resulted in ongoing suffering and distress . . . .

ECF No. 7-10 at 2.

30

Plaintiff alleges that Defendant Lucero failed to "exercise any of [her] powers to end the inadequate training of identifying symptoms of runaway infection, cirrhosis, and osteomyelitis, thereby maintaining a policy or custom of inadequate medical care by relying on insufficiently trained medical staff who inadequately refer prisoners for outside care." Third Am. Compl. ¶ 131, ECF No. 7. As Plaintiff grounds his deliberate indifference allegations against Defendant Lucero in her failure to conduct proper training, Plaintiff must plausibly allege that Defendant Lucero knew (1) Plaintiff's medical care was inadequate, (2) the medical staff's training was inadequate, (3) that their inadequate training contributed to the inadequate treatment of Plaintiff's ongoing serious medical needs, and (4) that Defendant Lucero failed to take reasonable measures in light of that knowledge. *See Farmers*, 511 U.S. at 837, 847. Plaintiff fails to do so.

First, Plaintiff must plausibly allege that Defendant Lucero knew that Plaintiff was at risk from inadequate care. *Farmer*, 511 U.S at 837; *see Tafoya*, 516 F.3d at 917-21. Plaintiff may do so via allegations that permit the court to infer knowledge through circumstance. *Farmer*, 511 U.S. at 842-43. Circumstantial knowledge means that "a substantial risk . . . was 'longstanding, pervasive, well-documented, or expressly noted by [] officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Id.*

For example, where plaintiff is a staff nurse, the subjective knowledge of inadequate care can be satisfied by "showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the plaintiff's] medical condition." *Mata*, 427 F.3d at 755. The court in *Mata* could infer circumstantial subjective knowledge because the staff nurse had a medical gatekeeping role, and the court could assume, based on that role, the staff nurse knew

31

what constituted adequate care. *Id.* at 755-57 ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm."). The nurse must have known, therefore, that doing nothing was inadequate after the plaintiff told the nurse she had severe chest pain. *Id.* at 757. Defendant Lucero is not, to the Court's knowledge, a medical professional nor does her role require medical training. The Court cannot make an inference like the one in *Mata* as to Defendant Lucero.

The Court can, however, circumstantially infer that an official knew of a substantial risk from the very fact that it was obvious. Resp. at 7, ECF No. 61; *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").[8]

But it is not obvious Plaintiff's care was inadequate. Plaintiff made four assertions to Defendant Lucero, spread over twenty-nine months, that his pain management and the availability of cirrhosis treatment were inadequate. Third Am. Compl. Ex. 4 at 2, ECF No. 7-4 ("[Plaintiff] is suffering extreme backpain which NMCD and Wexford are completely ignoring other than Tylenol and Lyrica which offers no pain relief. He needs to be sent to a specialist to determine the

---

[8]    Defendants argue *Farmer* limits this statement in its citation. Reply at 2, ECF No. 67 ("Plaintiff ignores the limiting context of that statement."); 511 U.S. at 842, ("Cf. [1 W.] LaFave & Scott[,] [Substantive Criminal Law] § 3.7, p. 335 [1986] ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of')."). *Farmer*, however, cited it as a "Cf.", meaning "The proposition supported by the authority is different from the main proposition but sufficiently analogous to lend support." *The Bluebook: A Uniform System of Citation* B1.2, at 4-5 (Columbia L. Rev. Ass'n et. al. eds. 22ed. 2025). As the citation is "different from the main proposition," the Court does not require "conclusive" information in addition to the "very fact that it was obvious." *Tafoya*, 516 F.3d at 916 ("Although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition.").

source of his pain and treat it accordingly. . . . His medical grievances have been ignored."); Third Am. Compl. Ex. 6 at 2, ECF No. 7-6 ("[Plaintiff] reports that staff at LCCF [t]ell him that there's no place for him to be sent for [cirrhosis] treatment, despite [Plaintiff] having knowledge that other inmates receive treatment."); Third Am. Compl. Ex. 9 at 2, ECF No. 7-9 (While at OCPF, [Plaintiff] is only receiving a small dose of Tylenol, which is not enough to manage his severe pain. . . . medical personnel have begun refusing him Tylenol and Lyrica, which is all he has been allowed for pain management despite severe pain."); Third Am. Compl. Ex. 10 at 2, ECF No. 7-10 ("[Plaintiff] is now at SNMCF where he is receiving no pain management upon the orders of Dr. Castrejon. This inconsistency and reduction in effective pain management have resulted in ongoing suffering and distress."). Plaintiff's assertions, on their own, do not permit an inference that Defendant Lucero knew his care was inadequate. They are best described as disagreements with and about the medical staff raised to the Secretary-level. And disagreements, though concerning, do not constitute deliberate indifference. *Gee*, 627 F.3d at 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

Without a plausible allegation that Defendant Lucero knew what constituted inadequate care, we are left with an objective reasonable-person standard, which does not suffice. *Farmer*, 511 U.S. at 841–42 ("[W]e cannot accept . . . that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."). Plaintiff must plausibly allege Defendant Lucero knew care was inadequate. As Plaintiff only points to his own declarations of inadequate care, which do not establish obviously inadequate care, he fails to

plausibly allege Defendant was aware Plaintiff received inadequate care.

Second, even if Plaintiff did plausibly allege Defendant Lucero was aware his care was inadequate, Plaintiff fails to plausibly allege Defendant Lucero knew the medical staff's training was inadequate, that their inadequate training contributed to the inadequate treatment of Plaintiff's ongoing serious medical needs, and that she failed to take reasonable measures considering that knowledge.

Plaintiff offers no plausible allegations that Defendant Lucero knew training was inadequate. At best, Plaintiff offers assertions that "[Plaintiff's] symptoms sound remarkably similar to the symptoms expressed by the 20+ inmates suffering systemic infections that led to hospitalizations and/or death." Third Am. Compl., Ex. 4 at 2, ECF No. 7-4. Plaintiff is asking for an inference that properly trained staff would have caught the symptoms, that Defendant Lucero was aware that properly trained staff would have caught the symptoms and prevented hospitalizations and/or deaths, and that Defendant Lucero was aware the training was inadequate. There is not a plausible allegation Defendant Lucero knew training was inadequate.

Plaintiff offers no allegations at all that Defendant Lucero knew inadequate training resulted in Plaintiff receiving inadequate care. *See generally* Third Am. Compl., ECF No. 7.

Finally, Plaintiff must plausibly allege that it was unreasonable for Defendant Lucero to have failed to order training, even though the only language in support is Defendant Lucero's overall responsibility "to exercise general supervisory power over all department employees," to "take administrative action by issuing orders to assume compliance with the law," and to "provide courses of instruction and practical training for employees of the department." *Id.* ¶ 131. The personnel at issue, Wexford medical staff, are not NMCD employees, they are medical contractors,

34

*see id.* ¶ 18, and Plaintiff makes no allegation that Defendant Lucero's responsibility to train extends to contractors.

The NOCs and statutory language do not plausibly allege that Defendant Lucero was aware the care received by Plaintiff was inadequate, that she was aware training was inadequate, that she was aware adequate training would have provided relief for Plaintiff's serious medical needs, or that it was unreasonable for her to fail to order adequate training. Plaintiff fails to plausibly allege Defendant Lucero was deliberately indifferent to risk of harm to Plaintiff. Defendant Lucero is entitled to qualified immunity and the claims against her are therefore dismissed.

(b) *Defendant Lovato*

Defendant Lovato, the NMCD General Counsel, received only the final NOC, NOC-9, on May 30, 2024. ECF No. 7-10 at 1. The Office of General Counsel received NOC-6, ECF No. 7-6 at 1, and NOC-8, ECF No. 7-9 at 1, without a named recipient. Brian Fitzgerald at the Office of General Counsel received NOC-1, ECF No. 7-1 at 1, NOC-2, ECF No. 7-2 at 1, NOC-3, ECF No. 7-3 at 1, NOC-4, ECF No. 7-4 at 1, and NOC-5, ECF No. 7-5 at 1. Plaintiff makes no allegations that Brian Fitzgerald sent the NOCs to Defendant Lovato or that NOCs addressed to the Office of General Counsel are uniformly reviewed by Defendant Lovato. *See generally* Third Am. Compl., ECF No. 7. Therefore, only NOC-9 is relevant to the Court's analysis of Defendant Lovato.

There may still be liability for deliberate indifference where a plaintiff receives inadequate treatment. *Oxendine*, 241 F.3d at 1279. Here, however, there are no plausible allegations that establish Defendant Lovato should have known that a decreasing pain management plan overseen by medical professionals, *see* Third Am. Compl. Ex. 10 at 2, ECF No. 7-10, was inadequate care and that Defendant Lovato failed to take reasonable steps in light of that knowledge.

35

Defendant Lovato is the General Counsel for NMCD. Third Am. Compl. ¶ 13. Plaintiff does not allege Defendant Lovato has any background or knowledge that would indicate the treatment Plaintiff received is inadequate. Moreover, Plaintiff makes no plausible allegation that it would be reasonable for the General Counsel of NMCD, having learned of one prisoner's complaint that he is enduring "ongoing suffering and distress" because of a medically approved elimination of pain management medications, to do anything besides prepare for an impending tort claim under the New Mexico Civil Rights Act. *See* Third Am. Compl. ¶ 135, ECF No. 7. Defendant Lovato is entitled to qualified immunity because Plaintiff fails to plausibly allege Defendant Lovato violated Plaintiff's constitutional rights. The claims against Defendant Lovato in his individual capacity are therefore dismissed.

(c) *Defendant Martinez*

Plaintiff asserts in the Complaint that Defendant Martinez was an employee of GEO Group, Inc. and served as Warden of LCCF. ECF No. 7 ¶ 16. Defendants assert in their Motion that Defendant Martinez "is a[n] NMCD employee, and never was the warden at LCCF." ECF No. 49 at 1 n.1. Plaintiff does not dispute this in his Response, *see generally* ECF No. 61, and therefore concedes that Defendant Martinez was never warden of LCCF and therefore cannot have been the recipient of NOCs sent to LCCF without a named recipient. *See* Third Am. Compl. Exs. 1-6, ECF No. 7-1 – 7-6. Defendant Ronald Martinez is a named recipient only of the final NOC, NOC-9, as Warden, Southern New Mexico Correctional Facility (SNMCF). ECF No. 7-10 at 1. Defendant Martinez received NOC-9 on May 30, 2024. *Id.*

As noted above, there may still be liability for deliberate indifference where a plaintiff receives inadequate treatment. *Oxendine*, 241 F.3d at 1279. As Warden, Defendant Martinez

presumably oversees the medical staff and the health of inmates under his care. But Plaintiff makes no plausible allegation that, as Warden, Defendant Martinez is aware of what constitutes adequate or inadequate care in this instance. Or that Defendant Martinez should have known that a decreasing pain management plan overseen by medical professionals constitutes inadequate care. *See* Third Am. Compl. Ex. 10 at 2, ECF No. 7-10. Without more, this is only a disagreement over the adequacy of treatment for Plaintiff's pain management. And "[d]isagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation." *Gee*, 627 F.3d at 1192 (citations omitted).

Nor does Plaintiff make a plausible allegation that it would be reasonable for Defendant Martinez, having learned of one prisoner's complaint that he is enduring "ongoing suffering and distress" because of a staff-approved elimination of pain management medications, to do anything. *See* Third Am. Compl. ¶¶ 159-60, ECF No. 7. Plaintiff fails to allege Defendant Martinez was aware of inadequate medical care and fails to allege Defendant Martinez failed to take a reasonable step to rectify it. Defendant Martinez is entitled to qualified immunity because Plaintiff fails to plausibly allege Defendant Martinez violated Plaintiff's constitutional rights. The claims against Defendant Martinez are therefore dismissed.

## IV. Conclusion

As Plaintiff has failed to plausibly allege Defendants were aware of alleged constitutional violations by Wexford, they cannot be held liable for supervisory liability under a theory of deliberate indifference. And as Plaintiff has failed to plausibly allege Defendants had subjective knowledge of Plaintiff's allegedly inadequate medical care, they cannot be held directly liable for deliberate indifference. As Plaintiff has failed to plausibly allege a constitutional violation under

37

either theory, Defendants are entitled to qualified immunity.

Accordingly, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss, ECF No. 49, is **GRANTED**. All claims against Defendant Alisha Tafoya Lucero, Defendant Hope Salazar, Defendant Wence Asonganyi, Defendant Orion Stradford, Defendant Mark Lovato, Defendant Jeannette Chavez, and Defendant Ronald Martinez in their individual capacities are hereby **DISMISSED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE